UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MOHAMMAD HAMED SHAMS,
A-241-539-902,

               Petitioner,

     v.

TODD M. LYONS, et. al.,

               Respondents.

No.  1:26-cv-01934-DAD-DMC-HC

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee proceeding with counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Respondents filed an answer, ECF No. 6, and Petitioner filed a traverse, ECF No. 8.

**I. BACKGROUND**

Petitioner contends he is a citizen of Afghanistan who entered the United States and was released on parole.[1] See ECF No. 1, pg. 2. Petitioner asserts that, following his release, he "timely filed a Form I-589, Application for asylum, with USCIS." Id. According to Petitioner,

---

[1] There are a number of factual discrepancies between the petition and records provided by Respondents. Indeed, the "facts" section of the petition discusses a petitioner Redon Api, not the Petitioner here. See ECF No. 1, pg. 9. The Court therefore only reiterates the facts supported by the documents provided and will address any relevant factual discrepancies in the following section.

1

he was re-detained in February 2026, absent any notice or individualized assessment to determine Petitioner's parole should be revoked. See id. Petitioner asserts three claims for relief: (1) violation of Petitioner's due process rights; (2) violation of § 1226; and (3) violation of the Administrative Procedures Act. See id. at 10-13. Petitioner seeks immediate release, upon the same conditions of his prior parole. See id. at 13.

According to Respondents, Petitioner was granted parole on September 4, 2021, and such parole expired September 3, 2023, "but Petitioner remained in the United States to pursue an asylum application." ECF No. 6, pg. 1. Despite Petitioner's claim his parole was extended, Respondents contend they do not have record of this. See id. Respondents argue that "Petitioner's temporary parole did not grant him a protected liberty interest in his continued liberty." Id. Respondents contend they "detained Petitioner after learning information about his potential connection to the Taliban and scheduled a custody hearing for him that he declined." Id. According to Respondents, Petitioner was investigated for his connection to Taliban, following an incident where Petitioner told other individuals he was a member of the Taliban. Id. at 2. Respondents provide a Federal Bureau of Investigation (FBI) file which documents Petitioner's November 30, December 3, and December 16, 2021, interviews with the FBI. See ECF No. 7.

Respondents contend that, "after learning this information," Petitioner was directed to report to the Department of Homeland Security's (DHS) Sacramento office on February 9, 2026, for an interview. ECF No. 6, pg. 2. Petitioner appeared for that interview, was detained, and issued a Notice to Appear, "alleging that he is inadmissible to the United States under 8 U.S.C. § 1182(a)(7)(A)(i)(I)." Id. Respondents contend that Petitioner was scheduled for a custody redetermination hearing, but Petitioner asked to cancel it, which was granted. See id.

Respondents argue that Petitioner has no protectable liberty interest because temporary parole does not create such interest. See id. at 2-3. Respondents contend that "[t]he sole means of release from detention per § 1225(b) is temporary parole 'for urgent humanitarian reasons or significant public benefit,' § 1182(d)(5)(A)" and such parole does not constitute an admission into the United States. Id. at 3 (internal citation omitted). Further, Respondents argue that even if Petitioner's parole was extended and had not expired, the Notice to Appear "would

2

have terminated the parole." Id.  Respondents contend that even though Petitioner was "not entitled to a hearing before his detention," Respondents offered Petitioner a hearing but he declined it. Id. at 4. Respondents assert that if the Court finds Petitioner has a protectable liberty interest, the only process Petitioner is due is a post-detention custody redetermination hearing where the burden is on Petitioner to establish he is not a flight risk or danger. See id. Respondents argue the government interest in detaining Petitioner is strong given the information about Petitioner's potential Taliban connection and his detention was not pretextual. See id. at 4-5.

## II. DISCUSSION

The undersigned finds that Petitioner has a protectable liberty interest in remaining out of custody, and he was deprived of this liberty without due process when re-detained without notice or a hearing.  Accordingly, the undersigned will recommend granting Petitioner's petition for writ of habeas corpus because his detention violates due process and recommend that Petitioner be immediately released from Respondents' custody under the same conditions he was released previously.

### A.      Documents Provided by Respondents

As a preliminary matter, Respondents attach a number of documents to the answer, ECF Nos. 6-1, 6-2, and 6-3.  However, Respondents do not request that the Court take judicial notice of such documents nor provide any basis for the Court to take judicial notice of those documents. See ECF No. 6. In a number of other §2241 immigration habeas cases, District Judge Drozd has declined to take judicial notice of the contents of exhibits and, even when judicial notice is requested, limits judicial notice to the existence of such documents. See Galdamez v. Warden, Cal. City Det. Ctr., 2026 U.S. Dist. LEXIS 50506, *3 (citing Bhatia v. Silvergate Bank, 725 F. Supp. 3d 1079, 1101 (S.D. Cal. 2024); Dent v. Holder, 627 F.3d 365, 371 (9th Cir. 2010)); Ramos v. Warden, Cal. City Corr. Ctr., 2026 U.S. Dist. LEXIS 65276.

However, out of an abundance of caution and in order to make the record clear, the undersigned will note discrepancies between Respondents' representations of such documents and the contents of the documents provided.

3

1.    Petitioner's alleged Taliban connection

According to Respondents, Petitioner was detained "after learning information about his potential connection to the Taliban." ECF No. 6, pg. 1. Petitioner argues that such information does not constitute a change in circumstances because "[t]he interview and events referenced occurred in 2021." ECF No. 8, pg. 2.

Respondents state that:

Once he entered the United States, [Petitioner] told individuals that he was part of the Taliban and lied about this information to government agents. The Department of Justice declined to prosecute Petitioner based on this information. But, the Department of Homeland Security Investigations Sacramento Unit along with other Department of Homeland Security ("DHS") units began investigating Petitioner. This investigation revealed that Petitioner had two brothers who are members of the Taliban.
After learning this information, DHS sent Petitioner an interview notice to report to DHS's Sacramento office On February 9, 2026.

ECF No. 6, pg. 2 (internal citations omitted) (citing ECF No. 6-2).

The exhibit is nine pages long and the first four parges state that the case was opened on January 2, 2026, and "Date Approved 1/6/2026." ECF No. 6-2, pgs. 1-4. On page four, it states "SHAMS' cousin, Muhammad Mukhtar SHAGHASI was interviewed at Fort McCoy as part of this interagency investigation. Muhammad Mukhtar SHAGHASI told agents that SHAMS' brother, Mohammad Habed SHAGHASI, is a member of the Taliban." Id. at 4. The next three pages are photos on a cell phone, id. at 5-7, which the document indicates are from Petitioner's cell phone on November 30, 2021, and "law enforcement facial recognition" indicated it was a "likely" to match Petitioner's brother Mohammad Habed Shaghasi. Id. at 4. The final two pages state that the case was opened November 4, 2021, and provides "Date Approved 1/14/2022." Id. at 8-9. Those pages also state that DHS agents were told that Petitioner's brother is a member of the Taliban. See id.

It therefore appears Respondents provided two different sets of documents, one that indicate they were drafted on or around January 2026, and the other, on or around later 2021 to early 2022. Both sets of documents provide the same information – that there were reports that Petitioner's brother is a member of the Taliban. Thus, Respondents' representation, which indicates that a more recent investigation yielded information about Petitioner's brother being a

4

member of Taliban, is not supported by the documents provided because they indicate that DHS and ICE were aware of these allegations in early 2022, prior to granting Petitioner parole and work authorization.

### 2. Expiration of Petitioner's Parole

Respondents contend that Petitioner's parole expired September 3, 2023. See ECF No. 6, pg. 3. However, the document provided by Respondents in support is a screen grab of a website record titled "Most Recent I-94." ECF No. 6-1. The top of the page has the date: 6/19/2022. Id. Thus, it appears Respondents provided a document that was created in 2022 to establish Petitioner's current parole status.

### B. Due Process

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94. Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Court considers each step in turn.

### 1. Liberty Interest

As for the first step, the Court finds Petitioner has shown he has a protectable liberty interest. See Morrissey, 408 U.S. at 482. "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face

5

significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." Id. (quoting Morrissey, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

As to whether there exists a protected liberty interest, the Court finds Petitioner was released from immigration detention, which created a reasonable expectation that he would be entitled to retain his liberty absent a material change in circumstances. Respondents argue that given Petitioner was granted temporary parole, Petitioner has no protected liberty interest in his release. The undersigned disagrees. Petitioner was granted special humanitarian parole as part of Operation Allies Welcome, on September 4, 2021. See ECF No. 6-1, pg. 2. Petitioner continued to live in the United States for over four years and was provided work authorization. Further, to the extent that Respondents argue that Petitioner did not have a liberty interest because his parole expired, "numerous courts in the Ninth Circuit have found that when a noncitizen is paroled under [8 USCS § 1182 (d)(5)] his 'liberty interest does not expire along with his parole.'" D.L.C. v. Wofford, F. Supp. 3d, 2026 U.S. Dist. LEXIS 10287, 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) (cleaned up) (collecting cases).

Petitioner's detention goes against United States Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is

conditional, have a liberty interest in their continued release. See Morrissey, 408 U.S. 471 at 482. Given this, the Court finds Petitioner has established his liberty interest in his continued release.

2.      Process Due

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To determine such, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner has lived in the United States for over four years and received work authorization. Despite that, Petitioner has now been detained for months. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. See Manzanarez v. Bondi, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); see also Colina-Meira v. Lyons, No. 1:25-cv-1716 CSK P, 2025 LX 673205 (E.D. Cal. Dec. 31, 2025).

Second, the risk of erroneous deprivation is considerable given Petitioner was not provided notice prior to his detention. "[T]he risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Chavarria, 2025 WL 3533606, at *3; see also A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).

7

Further, Respondents here do not identify the statutory basis for Petitioner's detention. While Respondents argue that parole under § 1225(b) does not constitute an admission, Respondents do not explicitly claim Petitioner is detained pursuant to § 1225(b). It is therefore unclear what statutory basis Respondents have to detain Petitioner. Thus, Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest. Moreover, without any procedural safeguards to determine whether his re-detention was justifiable, the probative value of additional procedural safeguards is high. R.D.T.M., 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). This Court finds the government has an interest in enforcing immigration laws but Respondents' interest in detaining Petitioner without notice or a hearing here is low. See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. Even if Respondents believed they had a proper reason to detain Petitioner, such decision on their part would warrant written notice and a pre-detention hearing rather than automatic detention. See E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process").

On balance, the Court finds the Matthews factors weigh in favor of finding Petitioner is entitled to notice and a bond hearing, and Petitioner should have been provided such notice and a hearing before he was re-detained. The Due Process Clause requires that, at a minimum, "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a pre-deprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at

8

480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents identify no reason why written notice was not provided or why a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

Thus, the undersigned finds Petitioner is entitled to relief as to his due process claims and will recommend granting Petitioner's petition for writ of habeas corpus.

**B.      Scope of Relief**

Respondents argue that, if the Court finds Petitioner has a protectable interest, the Mathews "factors favor a hearing and not release." ECF No. 6, pg. 4.  The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). However, this Court has recognized that in certain circumstances, a prompt post-deprivation hearing may be sufficient to satisfy due process.  See Calvillo v. Chestnut, No. 1:26-cv-00569-DC-CSK (HC), 2026 LX 36471, at *5 (E.D. Cal. Jan. 30, 2026) (finding a post-deprivation bond hearing is the proper remedy because "Respondents have viably alleged that Petitioner's re-detention was precipitated by a changed circumstance arguably indicating that Petitioner is a threat to public safety"); Martinez Hernandez v. Andrews, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) (finding that where government's asserted justifications for noncitizen's re-detention "are not obviously pretextual" and "there is a dispute of fact as to whether Petitioner repeatedly violated the terms of his parole" the proper remedy is "prompt, post-deprivation process" rather than immediate release); O.A.C.S. v. Wofford, No. 1:25-cv-01652-DAD-CSK, 2025 WL 3485221, at *5 (E.D. Cal. Dec. 4, 2025) (finding that the petitioner's dispute as to whether he violated the terms of his supervised release "does not demonstrate that his detention was pretextual," and therefore he "is not entitled to immediate release but is entitled to an in-custody bond hearing.").

Petitioner argues that DHS' 2025 policy decision to expansively apply § 1225(b) to noncitizens, regardless if they were previously granted parole, violates the INA. See ECF No.

1, pgs. 6-9.  Respondents argue that:

> After Homeland Security Investigations discovered Petitioner's ties to the Taliban, he was scheduled an interview to ensure he appeared and could be safely detained. Under such circumstances, Petitioner's ties to a terrorist organization showed he posed a heightened security and flight risk. So, the risk of erroneous deprivation was lower. Further, Respondents' interest in detaining Petitioner was elevated based on these same concerns. Thus, his detention without a hearing was not a due process violation.

> ECF No. 6, pg. 4 (internal citations omitted)(citing ECF No. 6-2).

While this, on its' face, is a potentially compelling argument, the undersigned is concerned with the discrepancies between Respondents' representation of the cited documents and what the documents actually state. Specifically, such documents, if taken to be true, show DHS was aware of this alleged Taliban connection by early 2022, ECF No. 6-2, and that the Sacramento office of Homeland Security Investigations was informed of DHS' 2021-2022 investigation on November 4, 2025, id. at 3.

The undersigned is concerned that Respondents are claiming Petitioner "pose[s] a heightened security and flight risk" requiring his immediate detention, without any time to provide Petitioner notice, in February 2026, when DHS was aware of that information by 2022, and the Sacramento branch was specifically aware of such information four months prior to Petitioner's detention. Indeed, that Petitioner was granted parole pursuant to Operation Allies Welcome (OAW) when DHS was aware of this allegation indicates Petitioner was previously determined to not pose such a risk. See Mohammadi v. Bondi, 2026 U.S. Dist. LEXIS 44707, *7, n. 2 (observing "that Afghan nationals paroled into the United States under 'Operation Allies Welcome' were subject to a 'rigorous screening and vetting process' prior to their arrival in the United States 'to ensure that those seeking entry do not pose a national security or public safety risk.'" (citing Operation Allies Welcome, Department of Homeland Security, https://www.dhs.gov/archive/operation-allies-welcome (accessed March. 4, 2026)); Seyed H.H. v. Andrews, 2026 U.S. Dist. LEXIS 20426, *3-4 (Judge Nunley finding "[u]nder OAW, the United States government aimed to safely resettle individuals from Afghanistan who worked alongside the United States during the Afghanistan war. Petitioner asserts that persons paroled from Afghanistan are required to pass background and medical checks, along with biometric security

screenings").

The undersigned therefore finds that the evidence before the Court shows Petitioner's February 2026, detention was pretextual because it was not based on any new information. Thus, it is distinguishable from other cases where a post-deprivation hearing satisfied due process, the undersigned will accordingly recommend Petitioner be granted release upon the same conditions of his prior parole.

### III. CONCLUSION

Based on the foregoing, the undersigned orders and  recommends:

1.      It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be GRANTED as Petitioner's redetention violates due process;

4.      It is RECOMMENDED that Petitioner Mohammad Hamed Shams, A-241-539-902, be RELEASED IMMEDIATELY from Respondents' custody upon the same conditions as his prior release, with his belongings. Respondents shall not impose any additional restriction on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;

5.      It is RECOMMENDED that Respondents be ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven (7) day notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at

11

issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 21, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

12